UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSIE MEZA, <br><br> Plaintiff, <br><br> vs. <br><br> CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, V WATERS, <br><br> Defendants. | Case No. 1:17-cv-00894-EPG-PC <br><br> ORDER DISMISSING PLAINTIFF'S COMPLAINT WITH LEAVE TO AMEND <br><br> (ECF No. 1) <br><br> **THIRTY (30) DAY DEADLINE** |

**I.     BACKGROUND**

Jessie Meza ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.[1]  Plaintiff filed the complaint commencing this action on July 7, 2017 (ECF No. 1), which is now before the Court for screening.

**II.     SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).

---

[1] Plaintiff has consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c) (ECF No. 8), and no other parties have made an appearance.  Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required.  Local Rule Appendix A(k)(3).

The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, Courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. *Id.* The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.*

### III. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff is a Catholic. He believes "in the power of prayer, that prayer is most absolute when joined in by two or more persons, particularly in a church setting or otherwise, especially during a loved one's funeral." He also believes "in a priest's ability to hear a person's confession and to absolve a person's sins, as well as a priest's ability to provide Holy Communion (eating the bread that represents the body of Christ.)"

On November 12, 2016, Plaintiff's brother died. Plaintiff's family scheduled a Catholic mass and burial service.

Two days after his brother's passing, Plaintiff met with his correctional counselor, Defendant Waters, to apply for "Temporary Community Leave (TCL)" to attend his brother's

funeral. Prior to determining eligibility, Defendant Waters told Plaintiff that his TCL application would be denied. Defendant Waters later participated in the actual denial of Plaintiff's TCL application.

Plaintiff was not able to attend his brother's funeral. There were institutional telephones available at Plaintiff's prison that could have been offered for Plaintiff's use during his brother's funeral. The phones were not offered.

Plaintiff states that prison rules and regulations require extra security measures, such as a correctional officer escort on TCL, for gang-member dropouts.

It is alleged that the California Department of Corrections and Rehabilitation (CDCR) has a custom or policy of categorically excluding "gang-member dropouts" like Plaintiff from participating in the TCL. Plaintiff further alleges that Defendant Waters has a custom or policy of categorically excluding "gang-member dropouts" like Plaintiff from participating in the TCL when officials in Defendant Waters' position at other CDCR institutions do not.

Plaintiff requests compensatory damages of $40,000 and punitive damages of $40,000.

### IV. SECTION 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles,* 533 F.3d 1010, 1026 (9th Cir. 2008).

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal,* 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the

violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

### V. ANALYSIS OF PLAINTIFF'S FREE EXERCISE CLAIM

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...." U.S. Const. amend I. The Ninth Circuit summarizes the application of the Free Exercise Clause in a state prison context as follows:

> The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, *Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 8, 67 S.Ct. 504, 91 L.Ed. 711 (1947), "prohibits government from making a law 'prohibiting the free exercise [of religion].' " *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam) (alteration in original). The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment. *See, e.g., O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Cruz*, 405 U.S. at 322, 92 S.Ct. 1079. A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration. *O'Lone*, 482 U.S. at 348, 107 S.Ct. 2400.

*Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).

"To prevail on their Free Exercise claim, Plaintiffs must allege facts plausibly showing that the government denied them 'a reasonable opportunity of pursuing [their] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Id*. (citing *Cruz*, 405 U.S. at 322, 92 S.Ct. 1079). To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious

belief." *Malik v. Brown,* 16 F.3d 330, 333 (9th Cir. 1994); *see Shakur,* 514 F.3d 884–85 (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in *Malik* determines whether the Free Exercise Clause applies). If the inmate makes his initial showing of a sincerely held religious belief, he must establish that prison officials substantially burdened the practice of his religion by preventing him from engaging in conduct that he sincerely believes is consistent with his faith. *Shakur,* 514 F.3d at 884–85.

Government action substantially burdens the exercise of religion when the action is "oppressive to a significantly great extent." *Int'l Church of Foursquare Gospel v. City of San Leandro,* 673 F.3d 1059, 1067 (9th Cir. 2011) (internal quotations and citation omitted). "That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Id.* (quoting *San Jose Christian College v. City of Morgan Hill,* 360 F.3d 1024, 1034 (9th Cir. 2004)). "A substantial burden exists where the governmental authority puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citing *Guru Nanak,* 456 F.3d at 988).

Here, Plaintiff alleges the prison failed to allow him to attend a funeral outside the prison on the basis of his alleged gang affiliation, i.e. as a "gang drop-out" and extra security needed due to that affiliation. This allegation does not establish a violation of the free exercise clause. Plaintiff can still practice his Catholic religion within the prison. Plaintiff's allegations do not indicate that the exercise of Plaintiff's religious beliefs was substantially burdened as a result of the denial of his TCL application to attend his brother's funeral. The refusal to allow Plaintiff to attend a funeral service was not on the basis of his Catholic religion—it was due to the security entailed in transporting and monitoring him during the service. This would indicate that the prison's restriction is reasonably related to a legitimate penological interest. *See Turner v. Safley,* 482 U.S. 78, 89-90 (1987) (providing that a restriction may be reasonably related to a legitimate penological interest upon the weighing of four factors: (1) there must be a valid, rational connection between the regulation and the legitimate governmental interest; (2) whether there are alternative means of exercising the right that remain open to inmates; (3) the impact that accommodation of the right will have on

guards, other inmates, and the allocation of prison resources; and (4) the absence of ready alternatives).

While not binding on this Court, the Court notes that other cases have denied Free Exercise claims based on similar allegations. *See, e.g., Beasley v. Konteh*, 433 F. Supp. 2d 874, 877 (N.D. Ohio 2006) (recognizing that prisoners have rights under the Free Exercise clause but finding that prisoners do not have the right to transportation out of prison to a synagogue for conversion or "to attend funerals of relatives, *Merritt v. Broglin*, 690 F.Supp. 739, 741–42 (N.D.Ind.1988); *Butts v. Wilkinson*, 145 F.3d 1330 (6th Cir.1998) (unpublished disposition)"); *Butler v. Snyder*, 106 F. Supp. 2d 589, 594 (D. Del. 2000) (holding that the First Amendment does not require prison officials to grant furloughs to attend religious events and reasoning that lawful incarceration "brings about the necessary withdrawal or limitation of many privileges and rights," such as the "the freedom to attend any number of events that occur outside the prison walls").

## VI. ANALYSIS OF PLAINTIFF'S RLUIPA CLAIM

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution…, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). Plaintiff must allege facts demonstrating that defendants substantially burdened the exercise of his religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994-95 (9th Cir. 2005). In any RLUIPA claim, one must first identify the "religious exercise" allegedly impinged upon, and then must ask whether the prison regulation at issue "substantially burdens" that religious exercise. *Greene v. Solano County Jail*, 513 F.3d 982, 987 (9th Cir. 2008).

"RLUIPA does not define 'substantial burden,' but [the Ninth Circuit] has held that 'a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise.'" *Hartmann*, 707 F.3d at 1124–25 (citing *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). "Generally, the term 'substantial burden' in RLUIPA is construed in light of federal Supreme Court and appellate jurisprudence involving the Free Exercise Clause of the First Amendment prior to the Court's decision in *Emp't Div. Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 878–82, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)." *Int'l Church of Foursquare Gospel*, 673 F.3d at 1067 (citing *Guru Nanak*, 456 F.3d at 988). "In the context of a prisoner's constitutional challenge to institutional policies, this court has held that a substantial burden occurs 'where the state ... denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Hartmann*, 707 F.3d at 1124–25 (citing *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)).

Here, the Court has already determined that the Plaintiff's allegations, as presently constituted, are insufficient to show a substantial burden in the First Amendment context. The RLUIPA substantial burden test is analyzed within the same Free Exercise Clause framework. *See Int'l Church of Foursquare Gospel*, 673 F.3d at 1067. Additionally, Plaintiff's RLUIPA claim fails because the sole relief requested by Plaintiff in his Complaint (monetary damages) is unavailable under RLUIPA. *See Taft v. California Dep't of Corr.*, No. 116CV01822SKOPC, 2017 WL 2813219, at *5 (E.D. Cal. June 29, 2017) ("Damages claims are not available under the RLUIPA against prison officials in either their individual capacity, *Wood v. Yordy*, 753 F.3d 899 (9th Cir. 2014), or in one's official capacity because of sovereign immunity, *Sossamon v. Texas*, [563] U.S. [277], 131 S.Ct. 1651 (2011); *Alvarez v. Hill*, 667 F.3d 1061, 1063 (9th Cir. 2012)").

### VII. ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment prohibits suits for monetary relief against states and state agencies. *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (citing *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 3057–58, 57 L.Ed.2d 1114 (1978) (holding that a suit

against a state and its Board of Corrections is barred by the Eleventh Amendment absent consent); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Allison v. California Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969)).

As noted above, Plaintiff's Complaint requests solely monetary damages. The CDCR is an agency of the state of California, and therefore, the monetary relief requested by Plaintiff is barred by the Eleventh Amendment. *See id*.

## VIII. CONCLUSION AND ORDER

The Court has screened Plaintiff's Complaint and finds that it states no cognizable claims against any defendant. As described above, this Court holds that denial of permission to attend a funeral outside the prison on the basis of Plaintiff's alleged gang drop out status does not violate Plaintiff's constitutional rights.

Nevertheless, the Court will allow Plaintiff to amend his complaint if he believes that additional facts would establish such a claim under the legal standards set forth in this order. Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave to amend shall be freely given when justice so requires." Accordingly, the Court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above. *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Plaintiff is granted leave to file an amended complaint within thirty days if he chooses to do so.

The amended complaint must allege constitutional violations under the law as discussed above. Specifically, Plaintiff must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Fed. R. Civ. P. 8(a); *Iqbal*, 556 U.S. at 678; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. *Iqbal*, 556 U.S. at 676. Plaintiff must also demonstrate that each defendant *personally* participated in the deprivation of his rights by acting with deliberate indifference to Plaintiff's health or safety, which is sufficiently serious. *Jones*, 297 F.3d at 934 (emphasis added).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. *George v. Smith*,

507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff is advised that an amended complaint supersedes the original complaint, *Lacey v. Maricopa County*, 693 F 3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superseded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Plaintiff may file a First Amended Complaint curing the deficiencies identified by the Court in this order if he believes additional true factual allegations would state any additional claims or claims against any additional defendants, within **thirty (30) days** from the date of service of this order;
3. If Plaintiff chooses to file an amended complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:17-cv-00894-EPG-PC; or
4. If Plaintiff fails to file an amended complaint within 30 days, the Court may dismiss Plaintiff's case for failure to state a claim and failure comply with a Court order.

IT IS SO ORDERED.

Dated: **September 6, 2017**      /s/ *Erica P. Grosjean*
                                   UNITED STATES MAGISTRATE JUDGE